IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:16CR280 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| DEZAY M. ELY, aka "SCRAP," | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman,

United States Attorney, and Kelly L. Galvin and Linda H. Barr, Assistant United States

Attorneys, and hereby submits this sentencing memorandum.

## I.  SUMMARY OF THE CASE

On or about July 3, 2016, Dezay Ely, Raymond Moore, and the victim Ayauna Bush,

traveled in Moore's 2005 Chevrolet Impala from a residence south of Akron, to a remote

location within the Cuyahoga Valley National Park (CVNP), a special maritime and territorial

jurisdiction of the United States.  Ely and Bush had stayed the night at Ely's brother's house.

Early in the morning, Ely awoke Bush and stated he wanted to test fire a firearm and he wanted

her to come.  Moore picked up Ely and Bush from the residence on West Wilbeth Road in Akron

and drove all three of them to the CVNP.  During the ride Ely questioned whether Bush was

going to tell anyone about his planned robbery.  At approximately 8:30 a.m., they arrived at a grassy access road off Akron-Peninsula Road, Peninsula, Ohio.  Moore drove them well into the tree-lined road before stopping the car near a field.  After they arrived, Ely and Bush got out of the Impala and walked a short distance into the field.  Moore stayed in the car.  Within minutes, Ely claimed the .22 caliber semi-automatic pistol he was 'test firing' jammed.  Seconds later, he fired at Bush, striking her three times, twice in the face and head, and once in the neck.  Ely left Bush and returned alone to the Impala driven by Moore, where they left, heading south on Akron-Peninsula Road.  Ely did not contact the police or EMS; he left her in the field to die.

Approximately 30-45 minutes later, Bush was found by a group of runners on the bridle trail that ran parallel to the field.  She was still conscious but bleeding profusely from her injuries.  The runners were able to stop a car and had the occupants call 911.

Paramedics arrived within a few minutes of the call.  The paramedic testified at trial that Bush likely had less than an hour to live given the blood loss, her vitals, and the conditions on a hot summer day.  She was transported to an area hospital where she was treated and eventually placed in a medically induced coma.

Ely was able to avoid detection until social media and phone records established a relationship between Ely and Bush.  When questioned on July 12, 2016, Ely denied knowing Bush.  Around August 8, 2016, FBI agents were finally able to talk to Bush.  She identified Ely as the shooter.  Ely was arrested pursuant to a criminal complaint on August 12, 2016.  (R. 1: Complaint, PageID 1).  He was later charged in an indictment with Attempt to Commit Murder, in violation of 18 U.S.C. § 1113, Using or Carrying, and Discharging a Firearm, during and in relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(A)(iii), and Felon in Possession of Ammunition, in violation of 18 U.S.C. § 922(g)(1).  Ely pleaded guilty to the

indictment without a plea agreement on May 16, 2017.  (Non-document: Minutes of

Proceedings, May 16, 2017).  The parties made no agreements regarding the sentence.

Bush received medical treatment for several months both in a hospital and rehabilitation

facility.  She has numerous permanent physical injuries as a result of the shooting.  She is

permanently blind in both eyes.  As to her injuries, she previously testified that:

> "[M]y right eye has to get removed the end of August because it's
> dead, its shrinking up, and that will be permanent.  I have bullet
> fragments in the left frontal lobe of my brain that has to stay there,
> and it affects impulses and short-term memory loss.  And my jaw,
> it hurts a lot, and that might be a permanent effect, because a
> bullet, it injured my maxilla, and they fixed it as best as they could.
> I have to work it out a lot.  And that can be permanent.  I can't
> smell.  My sinus nerves were damaged during my facial
> reconstructive surgery, and that can be permanent."

(R. 106: Trial Transcript, Bush, PageID 954).

## II.    GUIDELINE CALCULATION AND SENTENCING ENHANCEMENTS

### A.    GUILTY PLEA

Ely entered a guilty plea to all three counts of the indictment on May 16, 2017.  He

admitted to the elements of each offense.  Ely knowingly pled guilty to Attempted Murder of the

first degree at a change of plea hearing held on May 16, 2017.  (See R. 101: Transcript, Change

of Plea Hearing; PageID 867-910).  The government read aloud the elements charged in Count 1

of the Indictment that would have to be proved at trial, being that: "He intended to commit the

unlawful murder of a human being; second, he intended to do so with malice aforethought; and

third, that hat he intended to do so in a special maritime or territorial jurisdiction of the United

States . . . ."  (Id., at PageID 887-88).  The Court paused to ask the defendant and his counsel if

he agreed with the three elements listed by the government.

> THE COURT:  Mr. Fleming, can you tell me, do you agree with
> the three elements just listed by Ms. Barr?

3

> MR. FLEMING: I do.
>
> THE COURT:  Mr. Ely, you heard those elements as well, didn't you?
>
> THE DEFENDANT: Yes.

(Id., at PageID 888).

The Court again recited each element one by one and with each one, when asked if he agreed, the defendant responded affirmatively.

> THE COURT:  The first one is that you intended the attempt to commit murder. Did you, sir?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT:  And you intended to do that with malice aforethought?
>
> THE DEFENDANT: Yes.

(Id.).

The government agrees with the calculation proposed by the U.S. Probation Presentence Report (PSR).  (R. 98: PSR, PageID 844).  Defendant argues that the base offense level for Attempt to Commit Murder is 27, rather than 33, under U.S.S.G. § 2A2.1.

The following represents the proposed guideline calculation applicable to the defendant:

| Count 1 and 3 | | |
|---|---|---|
| **Title 18 U.S.C. § 1113: Attempt to Commit Murder;** | | |
| **Title 18 U.S.C. §§ 922(g)(1): Felon in Possession of Firearm and Ammunition** | | |
| Base offense level: | 27 | § 2A2.1(a)(2) |
| Object of the offense would have constituted first degree murder | 33 | § 2A2.1(a)(1) |
| Specific offense characteristics: victim sustained permanent or life threatening bodily injury | +4 | § 2A2.1(b)(1)(A) |
| **Total Offense Level before Acceptance of Responsibility** | **37** | |
| **Total Offense Level after Acceptance of Responsibility** | **34** | |

The government has no reason to believe Ely will not be eligible for a three (3) level reduction for his acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total

4

adjusted level of 34.  The advisory guideline range using a Base Offense Level of 34, Criminal

History Category IV, is 210-262 months.  However, the statutory maximum term of incarceration

allowed for Count 1 is 240 months and for Count 3 is 120 months.

| Count 2 | |
|---|---|
| **Title 18 U.S.C. §§ 924(c)(1)(A)(iii): Using or Carrying, and Discharging a Firearm During and in Relation to a Crime of Violence** | |
| Minimum term of imprisonment required by statute is 10 years consecutive to all other counts | § 2K2.4(b) |

Pursuant to U.S.S.G. § 2K2.4(b), since Ely has been convicted of a violation of Title 18

U.S.C. § 924(c)(1)(A)(iii), the guideline sentence is the minimum term of imprisonment required

by statute, in this case 10 years.  Chapters Three and Four shall not apply to this count of

conviction.  Therefore, the guideline range becomes 330 to 360 months.  However, the statutory

penalty for Count 2 is a mandatory minimum of 10 years up to Life imprisonment.[1]  This Court

is not limited to a sentence of 10-years only for Count 2, it may impose a higher sentence, but

must impose at least 10 years.

B.     THE OBJECT OF THE OFFENSE WOULD HAVE CONSTITUTED FIRST
       DEGREE MURDER.

Title 18, United States Code, Section 1113, makes it a crime for a person to attempt to

commit the unlawful killing of another human being, with malice aforethought, within the

special maritime and territorial jurisdiction of the United States.  The elements are:

That the defendant did something that was a substantial step
toward killing victim A.B.;

when the defendant took that substantial step, the defendant
intended to kill victim A.B.; and

---

[1] See United States v. Morgan, 572 F. App'x 292 (6th Cir. 2014).

the attempted killing occurred within the special maritime and territorial jurisdiction of the United States.

The object of such an offense would have constituted murder in the first degree.  See 18 U.S.C.

§ 1111.[2]

The appropriate United States Sentencing Guideline is § 2A2.1.  Assault with Intent to Commit Murder; Attempted Murder, which states:

> (a) Base Offense Level:
>
>> (1) 33, if the object of the offense would have constituted first degree murder; or
>>
>> (2) 27, otherwise.
>
> (b) Specific Offense Characteristics
>
>> (1) If (A) the victim sustained permanent or life-threatening bodily injury, increase by 4 levels; (B) the victim sustained serious bodily injury, increase by 2 levels; or (C) the degree of injury is between that specified in subdivisions (A) and (B), increase by 3 levels.
>>
>> (2) If the offense involved the offer or the receipt of anything of pecuniary value for undertaking the murder, increase by 4 levels.

The Sixth Circuit has consistently determined that shooting at a person in a manner that is deliberate and premeditated qualifies as an "object of the offense [that] would have constituted first degree murder."  United States v. Rogers, 261 F. App'x 849, (6th Cir. 2008).  In Rogers, the defendant used two firearms to shoot his victim without justification, at close range, as the victim was on the ground, and shot a second person who attempted to intervene.  The manner in which

---

[2] Murder is the unlawful killing of a human being with malice aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; . . . or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. 18 U.S.C. § 1111.

he shot the victim "more than supports the finding that Roger's actions constituted attempted first-degree murder." Id. at 853. Rogers analyzed applicable case law in the Sixth and other Circuits and concluded:

> Moreover, caselaw in this circuit and others demonstrates that courts have applied the cross-reference for assault with intent to commit first-degree murder under Guidelines § 2A2.1(a) to similar, and in some instances less egregious, conduct. See United States v. McDaniel, 165 F.3d 29, 1998 WL 661106, **2, 5 (6th Cir. 1998) (cross-referencing to § 2A2.1(a) after finding that a defendant who fired six shots at an officer's leg within 10 seconds was attempting to commit first-degree murder); United States v. Vaught, 133 F. App'x. 229, 233-34 (6th Cir. 2005) (affirming a district court's application of § 2A2.1(a) where the a defendant was carrying a gun near his sister's apartment after making a threat to kill her, even though the defendant never fired the weapon); United States v. Drew, 200 F.3d 871, 879 (D.C. Cir. 2000) (applying § 2A2.1(a) where the defendant pointed a gun at the victim's head but did not fire); United States v. Wilson, 992 F.2d 156, 158 (8th Cir. 1993) (affirming a cross-reference pursuant to § 2A2.1(a)(1) where the defendant fired a shotgun out of a vehicle toward a group of people and hit a bystander).

Id.

The Sixth Circuit qualified premeditated killing stating that, "'[a] killing is premeditated when it is the result of planning and deliberation . . . The amount of time needed for premeditation' varies depending on the circumstances, but must be long enough for the killer to have formed 'the intent to kill,' and 'be fully conscious of that intent.'" United States v. Ingle, 460 F. App'x. 593, 596 (6th Cir. 2012) (quoting United States v. Garcia–Meza, 403 F.3d 364, 371 (6th Cir. 2005). In Ingle, the defendant argued that the evidence did not establish that he intended to kill the officers, but rather that he intended to kill himself by compelling the officers to shoot him. Ingle determined:

> There is ample evidence in the record that Ingle was suicidal at the time of the incident, including his suicide note and subsequent suicide attempt. But there was also evidence that he acted with the intent to commit first degree murder. He fired an assault rifle at

> the officers at least eighteen times, some of the rounds came within inches of hitting the officers, he fired from covered positions, and he did not move into the open until he ran out of ammunition.  This evidence was sufficient to support the district court's finding that Ingle acted with the requisite intent to support the cross-reference to attempted first degree murder.

Ingle, 460 F. App'x. at 596.

In another Sixth Circuit case, a defendant argued that, "the district court did not find specifically that [he] had attempted first-degree murder, and that only proof of premeditation could elevate [his] conduct from attempted second-degree to attempted first-degree murder." United States v. Christian, 404 F. App'x. 989, 993 (6th Cir. 2010).  Christian and a co-worker ("Washington") had an ongoing dispute.  Washington had made threats to kill Christian for spreading rumors about his sexual orientation.  Christian testified that, while in the workplace breakroom and after another death threat, he came to believe that Washington went to his car to retrieve a gun to shoot him.  Christian did not want to wait for Washington to shoot him first, so Christian went to his own car, retrieved a loaded handgun, walked to Washington's car where he was sitting, and shot inside the vehicle several times, striking Washington.  Contrary to Christian's claims that the district court did not find specifically that he had attempted first degree murder, immediately after quoting the elements of first-degree murder from the statute, the district judge found both malice aforethought and premeditation:

> [T]he defendant got up, walked over to his car, had that distance to think about it, certainly got out a firearm, cocked it, came back, walked across the parking lot and then discharged the weapon into another human being.  Some things can happen so quick that they wouldn't constitute first degree murder had the victim died.  But in this case, there was certainly malice aforethought.  It was—it was willful, deliberate conduct.  It was premeditated in the sense that he brought the weapon in his car, he had the weapon in his car, he went to the car and got it.  He had people saying to him don't do it, it's not good, and he kept going anyway.  And then he started shooting.  I don't find that there's any credible evidence that ... Mr. Washington engaged in any physically provocative activity.

Id.

Furthermore, the Sixth Circuit affirmed the district court's finding of malice and premeditation in a case that the district court described as "not a classic case of attempted first degree murder."  United States v. Sanchez, 527 F. App'x. 488, 493 (6th Cir. 2013).  Sanchez came out of his house with a rifle to stop a fight between his brother, Juan Sanchez, and Angel Sandoval.  The fighting stopped momentarily and Sandoval backed away.  The brother came at Sandoval, and the men resumed fighting.  Being unarmed, when Sandoval heard shots fired at him, he ran, but was shot in the back near his shoulder.  The bullet hit a main artery in his shoulder and damaged a nerve ending in his hand.

Sanchez argued that the factual findings did not support the application of the attempted murder guideline, U.S.S.G. § 2A2.1, "because there was no proof of malice and premeditation." Id.  The Court opined to the contrary stating:

> [T]he district court specifically found that "the act of premeditation," "with malice aforethought," occurred when Defendant shot a fleeing Sandoval, because "there was no need to shoot him as he fled." The factual record, particularly Sandoval's and Brake's testimony, supports the district court's factual finding. Cf. United States v. Amos, 423 F. App'x. 541, 550 (6th Cir. 2011) (holding that the defendant had intent and malice aforethought to commit attempted murder of a federal agent where the defendant followed the ATF agent out of the house, told the agent several times to stop running, took aim, and shot twice); United States v. Smith, 308 F. App'x. 942, 948 (6th Cir. 2009) (holding that the district court properly imposed a four-level enhancement under U.S.S.G. § 2A2.1(a)(1) after finding that the defendant had acted "with intent to commit murder" or that his conduct was "deliberate and premeditated" where one victim was shot in the back while trying to run away).

Id.

Additionally, the Sixth Circuit has not established a "minimum threshold that a defendant must satisfy before he can be sentenced under § 2A2.2(a)(1)."  United States v. White, 27 F.

9

App'x. 584, 586 (6th Cir.2001).  White argued that U.S.S.G. § 2A2.1(a)(1) should not apply to him because "his conduct was far less culpable than two particularly egregious cases where this Court affirmed its application."[3]  Id.  The Court disagreed stating, "neither McDaniel nor Curry purport[ed] to establish a minimum threshold…"  Id.

Ely admits that his conduct constitutes attempted murder under Title 18, U.S.C. § 1111, but argues that it does not constitute attempted murder of the first degree.  The government disagrees.  Title 18, U.S.C. § 1111 states:

> (a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
>
> Any other murder is murder in the second degree.

Title 18, U.S.C. § 1111.

The evidence in this case shows that Ely shot Bush three times in the head and face.  Nothing in the record supports that Ely had no malice aforethought or that his attempt to murder her was not premeditated.  In fact, she testified at the trial of Raymond Moore, the co-defendant in this case, that Ely woke her up on the morning of the shooting and insisted that she

---

[3] In United States v. McDaniel, 165 F.3d 29 (table) 1998 WL 661106 (6th Cir. 1998), the defendant resisted arrest incident to a traffic stop, grabbed the police officer's gun, shot him five times, reloaded the gun, fled in his truck, and was apprehended only after a standoff.  In United States v. Curry, 111 F.3d 132 (table) 1997 WL 178885 (6th Cir. 1997), the defendant posed as a prospective buyer of a truck.  While driving with the owner in the passenger seat, the defendant shot the owner in the head and stole the truck.  See White, 27 F. App'x. at 586.

accompany him and Moore under the guise that he wanted to test fire a gun, stating that he

"wanted to test the gun before he went to rob somebody."  (R. 106: Trial Transcript, Bush,

PageID 944-45).  She testified that Ely questioned her repeatedly on the way to the field where

he shot her regarding an event earlier in the week, whether or not she was "going to tell" anyone

about the event.  (Id., at PageID 948).  Then she described the final sequence of events leading

up to the shooting:

> "When the car stops, [Ely] tells me to get out of the car.  I ask him
> why.  I told him I didn't want to get out of the car.
>
> He says, "Oh, so you're going to sit in the car with another ni--er?"
>
> And I rolled my eyes and I said, "Okay, I'll get out the car."
>
> I got out the car.  And we walked towards the field.  We didn't take
> that many steps, so we didn't walk far into the field, and when he
> pulled out his gun, he clicked it back, he shot two in the air and
> then told me it jammed and clicked it again.
>
> And he asked me did I hear a noise.  So I was looking directly at
> him.  He asked me did I hear a noise.  And as soon as I turned my
> head, he started shooting."

(Id., at PageID 950).

From the time Ely woke her up in the early morning hours, to the nearly 30 minute drive

to the CVNP, and including the time it took to walk from the car to the field, was well over an

hour, if not longer.  Clearly, Ely possessed the requisite intent at least from the time he woke her

up to test fire a gun, if not the day before.  The evidence speaks loudly that the shooting was

premeditated, and intended for her to not survive.  There is no argument the shooting was

accidental, or that he merely intended to fire warning shots, or he intended to shoot her in a non-

fatal location on her body.  The evidence in this case is more than sufficient to support the cross-

reference to attempted first degree murder under § 2A2.1(a)(1), thus increasing the base offense

level from 27 to 33.

## III.  GOVERNMENT'S REQUEST FOR UPWARD DEPARTURE UNDER U.S.S.G. § 4A1.3 AND/OR UPWARD VARIANCE UNDER 18 U.S.C. § 3553(A)

A district court's sentencing determination is reviewed "under a deferential abuse-of-discretion standard" for reasonableness, which has both a procedural and a substantive component.  Gall v. United States, 552 U.S. 38 (2007).  "Procedural reasonableness requires that a district court must properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors and adequately explain the chosen sentence—including an explanation for any variance from the guidelines range." United States v. Presley, 547 F.3d 625, 629 (6th Cir. 2008) (citation and internal quotation marks omitted).

Ely entered a guilty plea to being a felon in possession of a firearm without a plea agreement.  The government seeks an upward variance based on the § 3553(a) factors, and/or an upward departure from the guideline range under U.S.S.G. § 4A1.3.

This Court is required to consider the following factors in determining the sentence.

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

12

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

(5) any pertinent policy statement--

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court may consider an upward departure from the guidelines under the following:

(1) Standard for Upward Departure.--If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

(2) Types of Information Forming the Basis for Upward Departure.--The information described in subsection (a) may include information concerning the following:

(A) Prior sentence(s) not used in computing the criminal history category (e.g., sentences for foreign and tribal offenses).

(B) Prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions.

(C) Prior similar misconduct established by a civil adjudication or by a failure to comply with an administrative order.

(D) Whether the defendant was pending trial or sentencing on another charge at the time of the instant offense.

(E) Prior similar adult criminal conduct not resulting in a criminal conviction.

U.S.S.G. § 4A1.3.

A.     <u>THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT.</u>

The nature and circumstances of this offense are more serious than the typical felon-in-possession violation. Not only did Ely plead guilty to being a felon in possession, but he also pled guilty to Attempted First Degree Murder. In a statement submitted by the defendant to the U.S. Probation Office, Ely stated that he "possessed a firearm and ammunition and shot [A.B.] several times." (R. 87: PSR, PageID 807). In an attempt to silence Bush regarding her knowledge of Ely's illegal doings, he chose to take her to a remote field, shoot her, and leave her for dead. (<u>See</u> R. 106: Trial Transcript, Bush, PageID 932-54). That he would conjure up such a plan to preserve himself is, of itself, egregious, but the fact that he actually carried out that plan provides considerable insight into his violent nature and character.

Ely's personal history and characteristics significantly support an upward variance in this case. In spite of describing his childhood as being good and denying any substance abuse or violence in his home, Ely admitted that he began consuming alcohol, smoking marijuana, and ingesting MDMA ("Molly") at age 16. (R. 98: PSR, PageID 852-53,¶¶ 42-49). He had no juvenile adjudications for criminal behavior. Then just a month after turning age 18, he was arrested and eventually convicted of Carrying a Concealed Weapon. While he was out on bond for that offense, he committed two extremely violent robberies, both of which involved firearms. On June 22, 2007, he shot and killed a man while attempting to rob persons playing cards in a garage. Just four months later, he pointed a gun at a man's head, forced the man from a car and into a nearby apartment where he ordered the man to the ground so he could steal less than 2 ounces of marijuana from the man. (<u>Id.</u>, at PageID 850-51, ¶¶ 33, 35). On July 29, 2008, he was convicted of two counts of Aggravated Robbery, and Involuntary Manslaughter in Summit County Common Pleas Court and sentenced to a total of 11 years imprisonment for all of his

14

offenses.  After serving less than 8 years for four separate felonies, he was released on November 9, 2015.  His propensity for violence only escalated, as the instant offense occurred within seven months of being released from confinement and during his post release control.  His obvious lack of rehabilitation warrants the consideration of an upward variance as to Count 2 under 18 U.S.C. § 3553(a).

> B.  THE NEED FOR THE SENTENCE IMPOSED TO SATISFY THE GOALS OF SENTENCING

The government submits that for any sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant, this Court must consider sentencing the defendant to the maximum statutory penalty of 20 years on Count 1, and, must consider imposing a sentence beyond the mandatory minimum statutory penalty of 10 years consecutive on Count 2.[4]

The defendant served approximately eight years imprisonment for two separate 2008 armed robbery convictions, and an involuntary manslaughter conviction.  Despite that sentence, Ely still committed the instant attempted murder offense within a several months of being released; indeed, while he was on post-release supervision for the 2008 convictions.  The

---

[4] This Court is not required to give Ely additional notice that it may consider a § 3553(a) upward variance because Fed. R. 32(h)'s notice requirement only applies when a court "depart [s] from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission."  Since the Government filed the instant motion for § 3553(a) upward variance before the sentencing hearing, Ely has reasonable notice that such deviations from the original sentencing range are possible. See United States v. Quinlan, 473 F.3d 273, 279–80 (6th Cir.2007).  Furthermore, the Rule 32(h) notice requirement does not apply to upward variances under § 3553(a). Irizarry v. United States, 553 U.S. 708, 714, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008).

15

defendant clearly needs a significant incarceration sentence in order to adequately deter him from committing additional crimes in the future.

A significant sentence is also necessary in order to adequately protect the public from Ely's future criminal conduct.  While the defendant's Criminal History is only a Category IV, that category does not adequately reflect his violent nature and his high likelihood of recidivism.

The facts surrounding the defendant's 2008 aggravated robbery conviction and the present case of attempted murder are nothing short of alarming.  Since age 18, Ely spent the relatively few months that he was not incarcerated, inflicting violence upon those in his community.  He shot and killed a man in Akron while the man was playing cards in a garage with his friends.  Four months later Ely held a gun to another man's head to rob him of a mere one and a half ounces of marijuana.  His most recent victim, Bush, considered herself to be Ely's very close friend, indeed, his girlfriend.  (R. 106: Trial Transcript, Bush, PageID 924).  Yet he did not hesitate to shoot her in the face and neck three times with the intention of murdering her to keep her from "tell[ing]" about his next planned robbery.  (Id., at PageID 948).

United States v. Morgan, 572 F. App'x 292 (6th Cir. 2014) is extremely instructive and persuasive authority for this Court.[5]  Morgan, a drug dealer, was concerned about a credible threat of death due to his drug activities.  Morgan, 687 F.3d at 690.  Based on an investigation, officers executed a search warrant at his residence.  After knocking and receiving no response, they announced their presence and kicked in the door. Id.  Morgan fired at the officers as they entered a hallway, nearly striking, but not physically injuring, two officers. Id.  He testified at the

---

[5] As explained in the opinion, many of the facts were outlined in United States v. Morgan, 687 F.3d 688 (6th Cir. 2012), which was remanded for further fact-finding to support the district court's conclusions regarding the attempted murder cross-reference.  That cross-reference is not at issue here, although § 2A2.1 is the applicable guideline.

sentencing hearing he didn't know they were officer, and only fired 'warning shots' believing they were rival drug dealers. Id. at 691.  Morgan was convicted of intent to distribute marijuana and using, carrying and discharging a firearm during a drug trafficking offense.  Like Ely, he was subject to a mandatory minimum sentence of 10 years to run consecutive to all other counts.  The government requested an upward variance from the 10 years, and the district court agreed that an upward variance was warranted.  Because the district court did not make the necessary findings regarding the application of the attempted murder cross-reference, the sentence was vacated and the case was remanded for further findings.  Id. at 697.

During the resentencing hearing, the district court again concluded that an upward variance was warranted for the 924(c) offense and imposed a sentence of 156 months consecutive to the other charges.  The upward variance was based on the district court crediting the officers' testimony, and discrediting both Morgan and his wife's testimony.  The court determined Morgan's 'egregious' conduct was specifically intended to kill a person, and endangered the lives of the officers and other occupants of the house.

In the instant case, Ely's conduct is exceedingly far more egregious than Morgan's.  Considering this defendant's violent history and the fact that the he committed the instant offense conduct while on supervision further suggests a high likelihood of recidivism.  All of these facts and circumstances lead to the inescapable conclusion that Ely is violent and is likely to commit future offenses.  For all of these reasons, an upward variance from the mandatory minimum of 10 years as to Count 2 is necessary in order to adequately protect the public, deter the defendant, and satisfy the goals of sentencing.

IV.    **CONCLUSION**

The government respectfully asks this Court to find that Dezay M. Ely is subject to a base offense level of 33 pursuant to U.S.S.G. § 2A2.1(a)(1), since the object of the offense would have constituted first degree murder.  This Court should further find that the mandatory minimum of 10 years consecutive that must be imposed on Count 2 is insufficient to reflect the seriousness of the offense, and to provide just punishment for the offense and afford adequate deterrence to criminal conduct.  Ely is a dangerous criminal and the sentence imposed should protect the public from further crimes of the defendant, and punish him for the permanent, life-changing horrific injuries he caused to the victim.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:    /s/ Kelly L. Galvin
Kelly L. Galvin (OH: 0062585)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3731
(216) 522-8355 (facsimile)
Kelly.L.Galvin@usdoj.gov

/s/ Linda H. Barr
Linda H. Barr (PA: 0041079)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 44308
(330) 761-0521
(330) 375-5492 (facsimile)
Linda.Barr@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of October 2017, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Kelly L. Galvin
Kelly L. Galvin
Assistant U.S. Attorney